IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID THEO LEWIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 318-064 |
| | ) | |
| RONALD BRAWNER, Warden, | ) | |
| | ) | |
| Respondent.[1] | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Baldwin State Prison in Hardwick, Georgia, brings the above-styled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, Petitioner's motion to expand the record be **DENIED**, (doc. no. 21), this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

On February 21, 2012, the Dodge County grand jury indicted Petitioner on one count of false imprisonment, one count of abuse of an elderly person, one count of aggravated assault, and one count of hindering an emergency telephone call. (Doc. no. 19-6, pp. 95-99.)

_____

[1]The proper Respondent is the current Warden at Baldwin State Prison ("BSP"), Petitioner's place of confinement. See Rule 2(a) of the Rules Governing § 2254 Cases. According to the Georgia Department of Corrections website, Ronald Brawner is the Warden of BSP. See www.dcor.state.ga.us. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to update the docket consistent with this Report and Recommendation.

After a bench trial held October 11, 2013, the trial court convicted Petitioner on all counts and sentenced Petitioner to five years in prison for false imprisonment, five years in prison for abuse of an elderly person, twenty years in prison for aggravated assault, and twelve months in prison for hindering an emergency telephone call.  (Doc. no. 19-7, pp. 50, 117-18, 122.)  After firing attorney Thomas F. Jarriel on the morning of the bench trial, Petitioner proceeded *pro se*.  (Id. at 50, 54-63.)

Attorney Adam M. Hames represented Petitioner post-conviction and filed a direct appeal, in which he raised one enumeration of error:  the trial court abused its discretion in denying Petitioner's motion for a continuance the morning of the bench trial.  Lewis v. State, 768 S.E.2d 821, 822 (Ga. Ct. App. 2015).  The Georgia Court of Appeals found no merit to the alleged error.  Id. at 822-823.  The statement of facts contained in Petitioner's appellate brief are as follows:

> The facts of this case involve the beating of Mr. Lewis' 79 year old mother. On December 11, 2011, a friend of Mr. Lewis visited his house and knocked and knocked on the door.  Mr. Lewis came to the door and said "this isn't a good time."  Mr. Lewis' face, arms and clothes were covered in blood.  The friend, having driven a long way, demanded to know what was going on.  Mr. Lewis told her that he was going to shower and talk to her later.  Later, Mr. Lewis told the friend that he had gotten into a fight with his mother and he did not want to go back to jail.  The friend talked Mr. Lewis into letting her go into the house and talk with his mother.  The friend discovered Mr. Lewis' mother sitting in her recliner severely beaten.  Mr. Lewis came in and suggested to his mother that she tell people that she fell.  When police arrived Mr. Lewis told them that he had gotten into a fight with his mother and the knot on his head came from a fall.  Furniture was broken and there was blood in several places around the house.  Mr. Lewis testified that he was arguing with his mother and turned over a coffee table.  He testified that his mother hit him and that he pushed her.  He does not remember what happened after he pushed his mother.

(Doc. no. 19-8, pp. 142-43 (citations omitted).)

Petitioner filed a state habeas corpus petition *pro se* on August 25, 2015, in Gwinnett County, and subsequently amended his state petition on November 18, 2015.  (Doc. nos. 19-2, 19-3.)  In his initial state petition, Petitioner raised eight claims.  (Doc. no. 19-2.)  In his amendment, Petitioner raised one additional claim.  (Doc. no. 19-3.)  The state habeas court conducted an evidentiary hearing on October 7, 2016, at which Petitioner was represented by Attorney Matthew W. Carlton, and Mr. Hames and Petitioner testified.  (Doc. nos. 19-6, pp. 1-41.)  The nine grounds raised in Petitioner's state habeas petition, which are virtually identical to those raised in his current federal petition, are as follows:

(1)  Appellate counsel provided ineffective assistance by failing to argue on appeal Petitioner was denied the right to a speedy trial.

(2)  Appellate counsel provided ineffective assistance by failing to argue on appeal trial counsel failed to file a motion to recuse the trial judge.

(3)  Appellate counsel provided ineffective assistance by failing to argue on appeal trial counsel was ineffective for failing to file a motion to disqualify the District Attorney.

(4)  Appellate counsel provided ineffective assistance by failing to argue on appeal the trial court abused its discretion by failing to:  (a) grant a continuance;  (b) appoint counsel;  and (c) order standby counsel, compulsory process, and confrontation.

(5)  Appellate counsel provided ineffective assistance by failing to properly investigate Petitioner's mental illness and intellectual deficiency and have a psychologist determine Petitioner's competency to stand trial, degree of criminal responsibility, mental competence, and intellectual deficiency following traumatic brain injury.

(6)  The trial court abused its discretion by denying Petitioner's motion to modify or reduce sentence.

(7)  Appellate counsel provided ineffective assistance by failing to consult with Petitioner about his appeal, submitting an inadequate appellate brief and failing to raise the following issues on appeal: (a) the indictment was

3

erroneous; (b) the State failed to prove all elements of aggravated assault; (c) Confrontation Clause violation; and (d) the admission of hearsay testimony by Wendy Dixon.

(8)   Appellate counsel provided ineffective assistance by failing to argue on appeal the trial court improperly denied Petitioner's request for a continuance because of Petitioner's inability to subpoena witnesses and review medical records adequately.

(9)   Appellate counsel provided ineffective assistance by failing to perfect the record for appeal by filing a motion for new trial.

(Doc. nos. 19-2, 19-3.)  The state habeas court denied relief in a final order dated and filed March 10, 2017.  (Doc. no. 19-4.)  The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on June 4, 2018.  (Doc. no. 19-5.)

Petitioner timely filed the above-captioned § 2254 petition *pro se*, raising the following grounds for relief:

(1)   Appellate counsel provided ineffective assistance by failing to argue on appeal Petitioner was denied the right to a speedy trial.

(2)   Appellate counsel provided ineffective assistance by failing to argue on appeal trial counsel failed to file a motion to recuse the trial judge.

(3)   Appellate counsel provided ineffective assistance by failing to argue on appeal trial counsel was ineffective for failing to file a motion to disqualify the District Attorney.

(4)   Appellate counsel provided ineffective assistance by failing to argue on appeal the trial court abused its discretion by failing to:  (a) grant a continuance; (b) appoint counsel; and (c) order standby counsel, compulsory process, and confrontation.

(5)   Appellate counsel provided ineffective assistance by failing to argue on appeal trial counsel was ineffective for failing to properly investigate Petitioner's mental illness and intellectual deficiency and have a psychologist determine Petitioner's competency to stand trial, degree of criminal responsibility, mental competence, and intellectual deficiency following traumatic brain injury.

4

(6)   The trial court abused its discretion by denying Petitioner's motion to modify or reduce sentence.

(7)   Appellate counsel provided ineffective assistance by failing to consult with Petitioner about his appeal, submitting an inadequate appellate brief and failing to raise "necessary" issues on appeal.

(8)   Appellate counsel provided ineffective assistance by failing to argue on appeal the trial court improperly denied Petitioner's request for a continuance because of Petitioner's inability to subpoena witnesses and review medical records adequately.

(9)   Appellate counsel provided ineffective assistance by failing to perfect the record for appeal by filing a motion for new trial.

(See generally doc. no. 1.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S.

86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice."  White v. Woodall, 572 U.S. 415, 419 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable."  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S.-, 135 S. Ct. 1372, 1376 (2015) (petitioner must show state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct.  Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).   Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."  Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").   "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1) . . . .   Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

**III.   DISCUSSION**

      **A.   Pursuant to AEDPA, the Court Defers to the State Courts' Decisions Denying Petitioner's Claims in Grounds One Through Five and Seven Through Nine**

            **1.   Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  <u>Strickland</u>, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters v. Thomas</u>, 46 F.3d 1506, 1522 (11th Cir. 1995) (<em>en banc</em>)).  To show an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. <u>Strickland</u>, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the

circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional

consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue). Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264. Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of

federal law." <u>Barwick v. Sec'y, Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 578 U.S.-, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted).  To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u>  Put another way, "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Richter</u>, 562 U.S. at 105; <u>see also</u> <u>Sexton v. Beaudreaux</u>, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); <u>Woods</u>, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

**2.    The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claims in Grounds One Through Five and Seven Through Nine and Determination of Relevant Facts Were Not Objectively Unreasonable**

In Grounds One through Five and Seven through Nine of the federal petition, Petitioner argues Mr. Hames rendered ineffective assistance of counsel on appeal. (Doc. no. 1.)  The state habeas court rejected Petitioner's ineffective appellate assistance claims as to these grounds, concluding Petitioner had not shown Mr. Hames's performance was objectively unreasonable or that he was prejudiced by counsel's performance. (<u>See</u> doc. no. 19-4.)  The Georgia Supreme Court denied the request for a CPC in a two-sentence order: "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the Justices concur." (Doc. no. 19-5.)  This Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  <u>Wilson v. Sellers</u>, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).   "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  <u>Tharpe</u>, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court's reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of appellate counsel claims in a reasoned opinion.  <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.  As discussed below, the state habeas

court correctly identified and applied the two-part <u>Strickland</u> analysis to determine Petitioner did not show counsel's performance was objectively unreasonable or that he was prejudiced by counsel's performance.  (<u>See</u> doc. no. 19-4.)  Furthermore, the state court's determination of the facts was reasonable in light of the evidence presented in the state habeas court proceeding.

### a. Petitioner is Not Entitled to Relief on His Ineffective Assistance Claim Raised in Ground One

In his federal petition and supporting brief, Petitioner claims Mr. Johnson was ineffective for failing to challenge the denial of Petitioner's right to a speedy trial.  (Doc. no. 1-1, pp. 1-2; doc. no. 23, pp. 1, 6-11, 13-18.)  Petitioner argues he was denied the right to a speedy trial because (1) the trial court failed to enter a written order as to his statutory and constitutional speedy trial demands; (2) the State cancelled Petitioner's trial on three occasions; and (3) the substitution of counsel was not the basis for any delay of trial.  (<u>Id.</u>)

At the state habeas hearing, Mr. Carlton argued Petitioner's first attorney, David E. Morgan, III, filed a speedy trial demand on August 12, 2013, and Petitioner filed a *pro se* speedy trial demand on August 12, 2013.  (Doc. no. 19-6, p. 6.)  Additionally, on October 2, 2013, Mr. Jarriel filed a motion for discharge and acquittal in accordance with O.C.G.A § 17-7-170 and a motion to dismiss based on Petitioner's demand for speedy trial.  (<u>Id.</u>)  The habeas court noted a motion based on Petitioner's statutory speedy trial rights would have to be filed in a timely manner, and Mr. Carlton argued the motion was sufficient to trigger Petitioner's constitutional speedy trial rights.  (<u>Id.</u> at 8-9.)  The court also asked if Petitioner was represented at the time of his *pro se* motion, and Mr. Carlton stated he believed

Petitioner was not represented at the time.  (Id. at 9-10.)  Finally, Mr. Carlton acknowledged Petitioner's second attorney J. Frank Smith, Jr., may have waived the first speedy trial demand so Petitioner could undergo a mental evaluation.  (Id. at 10-11.)

At the habeas hearing, Mr. Hames first testified as to his professional background. Mr. Hames was a member of the Georgia bar since 1998, began his career as an assistant Attorney General handling non-death penalty murder appeals and state and federal habeas petitioners before entering private practice.  (Id. at 16.)  Mr. Hames had tried several cases, including child molestation and murder trials, and served as lead counsel by writing briefs in more than 120 murder cases.  (Id. at 17-18.)  To prepare for filing a direct appeal in Petitioner's case, Mr. Hames discussed the case with Petitioner, obtained a copy of the trial transcript, read the trial transcript, performed research, and spoke with Messrs. Smith and Jarriel.  (Id. at 19-20.)

As to Petitioner's Ground One claim, Mr. Hames testified he did not raise the issue of the purported denial of Petitioner's right to a speedy trial because the issue was inconsistent with the issue he raised at trial—the trial court's failure to grant a continuance—which Mr. Hames believed would be the strongest argument on appeal.  (Id. at 21-22.)  Furthermore, Mr. Hames determined after a review of the record there was not a viable statutory or constitutional speedy trial demand.  (Id. at 22-23.)

Based on Mr. Hames's testimony and the record, the state habeas court determined Petitioner could not satisfy either prong of the Strickland test as to his Ground One claim. (Doc. no. 19-4, pp. 11-12.)  The state habeas court found no deficient performance because the issue was inconsistent with the issue Mr. Hames raised on appeal and there were no

14

viable speedy trial requests on the record upon which a valid argument could be made.  (Id.)

As to the latter, the court determined the first speedy trial request was withdrawn to allow

Petitioner to undergo a mental health evaluation and the second request was invalid because

he filed it *pro se* while represented by his third attorney, Sarah Riedel.   (Id. at 6-7.)

Furthermore, neither request invoked his constitutional speedy trial rights.  (Id. at 7.)  The

state habeas court determined Petitioner could not show prejudice because, in addition to

being withdrawn, the initial demand was not made in a timely manner, and, moreover,

Petitioner undermined any such request by requesting a continuance at the beginning of the

bench trial and stating he wanted any speedy trial demands withdrawn.  (Id. at 12.)

   The state habeas court's decision as to Petitioner's Ground One claim is based on a

reasonable application of the Strickland standard for ineffective assistance of counsel and a

reasonable determination of the facts.  First, there was no viable speedy trial demand on

record at the time of trial, and, even if there were, Petitioner waived it by seeking to

withdraw the demand immediately before the bench trial.

   Petitioner was indicted on February 21, 2012.  (Doc. no. 19-6, pp. 95-99.)  On March

18, 2013, Mr. Morgan filed a motion for speedy trial on Petitioner's behalf.  (Id. at 109.)  The

motion did not specify whether the basis for the motion was statutory or constitutional.  (Id.)

However, O.C.G.A. § 17-7-170 requires a statutory speedy trial demand to be filed within

the same term the indictment was filed or the succeeding term.  Because Petitioner filed the

motion in the third term after the term during which he was indicted, see O.C.G.A. § 15-6-

3(29)(B), the request was untimely.   Furthermore, on April 23, 2013, Mr. Smith

unambiguously withdrew his demand for speedy trial to allow Petitioner to undergo a mental

evaluation. (Doc. no. 19-7, pp. 46-47.)  As to the second request on record, on August 12, 2013, Petitioner filed a *pro se* motion for speedy trial.  (Doc. no. 19-6, p. 159.)  However, Ms. Riedel made an entry of appearance as Petitioner's third attorney on July 30, 2013, prior to Petitioner's motion being filed.  (Id. at 143.)  Furthermore, Mr. Jarriel's motions filed on behalf of Petitioner asserting his speedy trial rights were premised on the March 18th request, which, as described above was untimely and subsequently withdrawn.  (Doc. no. 19-7, pp. 12-18.)  Finally, at the bench trial, Petitioner clearly sought to withdraw any existing speedy trial demands.  Petitioner stated he had "been asking for this speedy trial thing to be dropped for some time now."  (Id. at 54.)  Moreover, Petitioner stated Mr. Jarriel "refused to drop the speedy trial thing" despite Petitioner's instructions.  (Id. at 55.)

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court identified five criteria to determine when a defendant's constitutional right to a speedy trial has been violated.  The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant.  United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006).  None of these factors weigh in favor of Petitioner.

Although approximately twenty months passed between the filing of the indictment and the bench trial, at least some of the delay was attributable to Petitioner.  Petitioner ultimately fired four attorneys.  See Lewis, 768 S.E.2d 821, 821-22 (describing changes in Petitioner's representation).  Furthermore, Petitioner's case was delayed while he underwent a mental evaluation, upon request of counsel.  (Doc. no. 19-7, pp. 46-47.)  Third, Petitioner, at best, only ambiguously asserted his constitutional speedy trial rights, as his requests were

not specific as to the basis of the relief requested and made no mention of constitutional standards.  (Doc. no. 19-6, pp. 109-159.)  Indeed, the state habeas court's determination Petitioner did not assert his constitutional speedy trial rights is not unreasonable in light of the record.  Moreover, Petitioner emphatically sought to waive the right to a speedy trial on the day of his bench trial.  (Doc. no. 19-7, pp. 54-55.)  Finally, Petitioner has not asserted what, if any, prejudice he suffered at trial.  He contends the death of his mother—who was also the victim in this case—prior to trial prejudiced his ability to defend himself.  However, Petitioner states she died ten months before trial, which would have been approximately January 2013, before he filed his first speedy trial motion.  (doc. no. 23, p. 15.)  Thus, Petitioner cannot show any prejudice which would have been prevented by the trial court setting Petitioner's case for trial more quickly after his first demand.

In short, the state habeas court's determination Petitioner failed to show Mr. Hames rendered ineffective assistance of counsel by not raising this meritless argument on appeal is based on neither an unreasonable application of Strickland nor an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to relief on his Ground One claim.

> **b.      Petitioner is Not Entitled to Relief on the Ineffective Assistance Claim Raised in Ground Two**

In Ground Two, Petitioner argues Mr. Hames was ineffective for failing to argue on appeal ineffective assistance of trial counsel for failure to move for recusal of the trial judge. (Doc. no. 1-1, p. 3.)  Petitioner argues trial counsel should have sought recusal because the trial judge represented Petitioner in a criminal case in 1985 or 1986, during which he

obtained "personal and confidential knowledge" about Petitioner, and the judge's wife is "distant kin" to Petitioner's maternal family.  (Doc. no. 1-1, p. 3.)

Moments before the bench trial began, the trial judge acknowledged receipt of information Petitioner did not want him presiding over the trial because of a familial relationship of either five or six degrees between Petitioner and his wife and the trial judge's prior representation of Petitioner.  The trial judge stated he had informed Petitioner of the familial relationship at Petitioner's first appearance before him.  (Doc. no. 19-7, p. 57.)  The trial judge commented there was no basis for recusal because the nature of the relationship was not such to warrant recusal.  (Id.)  Furthermore, the trial judge noted Petitioner did not file any recusal motion, much less one within the deadline of ten days from the initial appearance.  (Id. at 57-58.)  Next, the trial judge discussed his past representation of Petitioner and stated "[t]hat was a long time ago, completely separate from this issue, and . . . [d]id not see that as grounds for recusal."  (Id. at 67.)

At the habeas hearing, Mr. Hames testified he recently worked on a civil appeal regarding judicial recusal and did not see a viable basis for recusal in Petitioner's case, explaining "[t]here wasn't any per se disqualification of the judge for something that had occurred, you know, almost a decade or more beforehand."  (Doc. no. 19-6, p. 23.) Furthermore, Mr. Hames explained there was no motion for recusal filed in the trial court, and the only mention of the issue in the record from the trial court was the brief discussion described above that occurred just before the trial began.  (Id. at 23.)  Finally, Mr. Hames did not believe there was any benefit to advancing ineffective assistance of trial counsel claims because ultimately Petitioner fired all of four of his attorneys and decided to represent

18

himself, which in Mr. Hames's opinion made it impossible for Petitioner to show prejudice even assuming ineffective assistance.  (Id. at 23-24.)

In its order, the habeas court recounted Mr. Hames's testimony and found Petitioner did not establish either prong of the Strickland analysis with respect to Mr. Hames's decision not to pursue on appeal a claim for ineffective assistance of trial counsel relating to the recusal issue.  (Doc. no. 19-4, pp. 7-8, 12-13.)  First, the court found Petitioner failed to show Mr. Hames's decision to not raise the recusal issue on appeal was unreasonable, citing Mr. Hames's knowledge of the recusal standards and determination he could not prevail on the issue on appeal.  Second, the habeas court found Petitioner failed to show a reasonable probability the result of his appeal would have been different had he raised the recusal issue on appeal, citing in support the absence in the trial record of any motion to recuse or affidavit explaining the factual support for recusal.  As the habeas court explained, a legally sufficient affidavit must accompany a formal motion to recuse pursuant to Uniform Superior Court Rule 25.1.  (Id. at 12-13.)

The paucity of information in the trial record suggests a valid basis for seeking recusal pursuant to O.C.G.A. § 15-1-8 and Georgia Code of Judicial Conduct Canon 3(a), which prohibit a judge from presiding in any case where the judge or his spouse is related to a party or interested person within the sixth degree.  O.C.G.A. § 15-1-8 (2013); GA R CJC Canon 3(a).  Here, the trial judge stated his wife was related to Petitioner within five or six degrees, and it is likely the relationship was one degree closer with respect to the trial judge's wife and the victim, Petitioner's mother.  If the judge was correct in his determination of a five or six degree relationship, a motion for recusal may well have succeeded and, if denied,

19

could have resulted on appeal in reversal and remand for a new trial before a different judge. See, e.g. Post v. State, 779 S.E.2d 624, 634 (Ga. 2015) (explaining reversal of trial judge on motion to recuse results in remand, reassignment of case, and all proceedings after filing of motion to recuse are invalid and of no effect).

The problem for Petitioner on appeal, however, was the poor posture in which Mr. Hames received the case.  The record only contains the trial judge's informal discussion of the recusal issue, without benefit of a formal motion and briefing, and Petitioner's constant but vague refrain he is "distant kin" to the trial judge's wife.  More importantly, Petitioner did not file a motion for new trial.  As discussed in § III(A)(2)(h) *infra*, Mr. Hames is not responsible for Petitioner's failure to file a motion for new trial.  Had Petitioner filed a motion for new trial, the trial record would have included Petitioner's allegations of ineffective assistance and testimony by the trial attorneys explaining why they did not seek recusal.  Without such a record, Mr. Hames had no basis for alleging ineffective assistance of trial counsel on appeal.  A brief discussion of two Georgia appellate decisions proves the point.

In Battle v. State, 784 S.E.2d 381 (Ga. 2016), the defendant alleged ineffective assistance of trial counsel for failure to seek recusal because of allegations the defendant plotted to kill the trial judge.  Id. at 387.  The Georgia Supreme Court decided the claim by carefully assessing testimony by the trial attorney at a hearing on the defendant's motion for new trial.  The trial attorney testified he knew there was a factual basis for seeking recusal but "made the deliberate strategic decision not to do so . . ." because the trial judge's rulings to date had been fair, the client had not voiced any concerns about the trial judge's

20

impartiality, and there was no reasonable chance of a different outcome before a different judge because of the overwhelming evidence of guilt.  Id. at 388.  Citing the trial attorney's reasoning for not seeking recusal, the court found the defendant "failed to show that [trial counsel's] strategic decision not to file a timely motion . . . seeking . . . recusal was patently unreasonable, and Appellant therefore has failed to prove deficient performance."  Id.  The court also found no prejudice because recusal was discretionary and not mandatory, there was no evidence the trial judge made any improper rulings motivated by bias, the jury had no knowledge of the facts giving rise to the recusal issue, and the evidence of the defendant's guilt was overwhelming.  Id.

The defendant in Pirkle v. State, 657 S.E.2d 560 (Ga. App. 2008) asserted a claim for ineffective assistance of trial counsel in failing to seek recusal because of a relationship between the presiding judge and a witness for the prosecution.  At the hearing on the defendant's motion for new trial, trial counsel listed a number of strategic reasons for not seeking recusal, including the defendant had appeared before other judges on the same court and it was not in the defendant's interest to have another judge try his case.  Id. at 561-62. Explaining the high bar to finding ineffective assistance concerning decisions that are strategic in nature, the Georgia Court of Appeals found no ineffective assistance because the decision not to seek recusal was not "so patently unreasonable that no competent attorney would have so chosen."  Id. at 562.

In stark contrast to Battle and Pirkle, Petitioner did not file a motion for new trial. Accordingly, nothing in the trial record indicates, for example, whether (1) any of Defendant's four trial attorneys knew about the familial relationship between Petitioner and

21

the trial judge; (2) Petitioner agreed with the trial judge's assessment the degree of relationship was five or six; (3) Petitioner expressed to his attorneys a desire to seek recusal; (4) the trial attorneys considered seeking recusal but decided against it, and if so, the reasons for deciding recusal was not a sound strategic decision.  Nor did Petitioner present any of these facts to the state habeas court.  Without these basic facts, Mr. Hames had no chance of success on appeal to show trial counsel made a patently unreasonable strategic decision no competent attorney would have chosen.

Additionally, Mr. Hames correctly determined Petitioner would have experienced difficulty showing prejudice because he fired four trial attorneys and represented himself periodically at the trial level.  A recusal motion must be filed not later than five days after learning of the alleged ground for disqualification and not later than ten days prior to the hearing or trial unless good cause is shown.  Ga. Unif. Super Ct. R. 25.1.  Because of gaps between representation, Petitioner proceeded *pro se* at various times prior to trial, including between July 11 and July 31, 2013, and August 20 and approximately August 27, 2013.  (Doc. no. 19-6, pp. 142-43, 169-171.)  If, as he contends, pretrial counsel failed to file a motion to recuse on his behalf, Petitioner could have filed a *pro se* motion to recuse during one of these periods and argued good cause for the delay based on his previous counsel's failure to file such motions on his behalf.  However, even though the record contains several *pro se* filings from Petitioner, both when he was and when he was not represented, Petitioner failed to file a motion to recuse.  Thus, as Mr. Hames determined, Petitioner could not show prejudice based on any of his pretrial counsels' failure to file such a motion on his behalf.

22

Accordingly, the state habeas court's decision not to grant relief to Petitioner on his Ground Two claim was neither an unreasonable application of <u>Strickland</u> nor an unreasonable determination of the facts, and, thus, he is not entitled to relief on this claim here.

### c.   Petitioner is Not Entitled to Relief on the Ineffective Assistance Claim Raised in Ground Three

In Ground Three, Petitioner argues Mr. Hames was ineffective for failing to argue on appeal Petitioner's pretrial counsel were ineffective for failing to move to disqualify the District Attorney, Timothy G. Vaughn.  (Doc. no. 1-1, p. 4.)  Petitioner argues Mr. Vaughn, harbored "extreme prejudice and personal bias" against Petitioner because of an allegation Petitioner threatened Mr. Vaughn while he was an Assistant District Attorney.   (<u>Id.</u>) Furthermore, Petitioner cites to Mr. Vaughn's statement at sentencing he knew Petitioner and his mother for many years.  (<u>Id.</u> (citing doc. no. 19-7, pp. 119)).  Mr. Carlton, Petitioner's state habeas counsel, did not elicit testimony on this ground at the state habeas hearing.  The state habeas court determined Mr. Hames's decision not to raise the issue on appeal was strategic and, furthermore, Petitioner could not show prejudice because Petitioner did not assert a valid basis for disqualification supported by evidentiary proof.  (Doc. no. 19-4, pp. 13-14.)

In Georgia, "[i]t is possible for a disqualifying conflict of interest to arise where a prosecutor has acquired a personal interest or stake in the defendant's conviction." <u>Head v. State</u>, 560 S.E.2d 536, 538 (Ga. Ct. App. 2002) (citing <u>Williams v. State</u>, 258 Ga. 305, 314-315, 369 S.E.2d 232 (1988)).  "For example, a prosecutor's close personal relationship with

23

the victim in a case may create at least the appearance of a prosecution unfairly based on private interests rather than one properly based on vindication of public interests." Id.

The record contains no evidence of any conflict of interest or resulting misconduct, which could have given rise to a meritorious argument on appeal. As to Petitioner's statement he was "alleged to have threatened" Mr. Vaughn previously, Petitioner offers no supporting details, states criminal charges related to the alleged threat were dropped, and, moreover, does not even admit the event ever actually occurred. (Doc. no. 1-1, p. 4.) Thus, Petitioner's allegation does not support a finding Mr. Vaughn acquired a personal interest or stake in Petitioner's conviction. Head, 560 S.E.2d at 538.

Second, Mr. Vaughn only stated he knew Petitioner and his mother "for many years." (Doc. no. 19-7, p. 119.) Mr. Vaughn only noted his familiarity with Petitioner and his mother, the victim, to preface his argument at sentencing about the relationship between Petitioner and his mother. (Id.) However, there is no indication of a "close personal relationship" with either the victim or Petitioner which would create an appearance of unfair prosecution. Head, 560 S.E.2d at 538. Accordingly, neither of Petitioner's arguments provide a valid basis for disqualification of Mr. Vaughn as the prosecutor for the State. As a result, pretrial counsel was not ineffective for raising this meritless issue, and Mr. Hames was not ineffective for not challenging their representation as ineffective on appeal. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

Thus, the state habeas court's denial of relief on this ground was a reasonable application of <u>Strickland</u> and was based on a reasonable determination of the facts, and Petitioner is not entitled to relief on this ground.

### d.   Petitioner Is Not Entitled to Relief on His Ground Four Ineffective Assistance of Appellate Counsel Claim

In Ground Four, Petitioner argues Mr. Hames provided ineffective assistance by failing to argue on appeal the trial court abused its discretion by failing to:  (a) grant a continuance; (b) appoint counsel; and (c) order standby counsel, compulsory process, and confrontation.  (Doc. no. 1-1, p. 5.)  Petitioner argues his mental health issues rendered him unable to represent himself or make a knowing and intelligent waiver of counsel, yet the trial court denied his request for a continuance and forced Petitioner to proceed without the benefit of counsel after he fired his retained counsel, Mr. Jarriel, the morning the bench trial began.  (<u>Id.</u>)  Petitioner argues the refusal rendered him unable to obtain attendance of witnesses or to review the medical evidence he received the morning of trial.  (<u>Id.</u> at 6.)

In his appellate brief, Mr. Hames argued the trial court violated Petitioner's Sixth Amendment and Due Process Rights by failing to grant a continuance.  (Doc. no. 19-8, p. 144.)  Moreover, Mr. Hames specifically discussed Petitioner's rights to counsel, compulsory process, and confrontation in his argument.  (<u>Id.</u> at 145, 151, 154-156.)  The Georgia Court of Appeals rejected Mr. Hames's argument and affirmed the conviction.  <u>Lewis</u>, 768 S.E.2d at 822-32.

At the habeas hearing, Mr. Hames testified there was no viable argument the trial court erred by failing to appoint counsel or order stand-by counsel.  (Doc. no. 19-6, p. 24.)

25

The state habeas court found Petitioner did not qualify for appointed counsel and cited Mr. Hames's belief as to the viability of the issues of appointment of counsel.  (Doc. no. 19-4, p. 8.)  Finally, Mr. Hames testified the trial transcript reflected animosity between Mr. Jarriel and Petitioner before trial.  (Id.)  The state habeas court found Mr. Hames in fact argued on appeal the trial court abused its discretion by refusing Petitioner's request for a continuance, and Mr. Hames was not ineffective for failing to challenge the failure to appoint counsel or stand-by counsel because Petitioner was not indigent and defendants are not entitled to standby counsel.  (Id. at 14.)

The state habeas court's decision is based on a reasonable application of Strickland and a reasonable determination of the facts before the court.  Indeed, Mr. Hames argued the trial court erroneously denied Petitioner's request for a continuance on appeal.  (Doc. no. 19-8, p. 144.)  Furthermore, Mr. Hames directly addressed the effect the denial had on Petitioner's Sixth Amendment rights to counsel, compulsory process, and confrontation at trial.  (Id. at 145, 154-55.)  Because Mr. Hames addressed these issues on appeal, Petitioner cannot establish Mr. Hames was ineffective.

Furthermore, Petitioner also cannot show prejudice because he was not entitled to appointment of counsel or standby counsel.  The record clearly indicates Petitioner was not indigent and, thus, was not entitled to appointment of counsel.  (Doc. no. 19-7, p. 71.)  Furthermore, pro se criminal defendants are not entitled to appointment of stand-by counsel. Gamble v. State, 510 S.E.2d 777, 782 (Ga. Ct. App. 1998) (""[A]lthough trial courts often require appointed counsel to remain in the courtroom as standby counsel after a defendant has elected to proceed pro se, there is no requirement that they do so.  A criminal defendant

26

has the right to by represented by counsel, and that the right to represent himself, but does not have the right to represent himself and also be represented by an attorney.'") (quoting Reviere v. State, 2498 S.E.2d 332 (Ga. Ct. App. 1998).  Moreover, Mr. Hames testified there was discord between Petitioner and Mr. Jarriel at trial.  (Doc. no. 19-6, p. 24.)  This apparent animosity would have made Mr. Jarriel's representation as stand-by counsel difficult. Accordingly, for all the foregoing reasons, Petitioner is not entitled to relief on his Ground Four claim.

### e.    Petitioner Is Not Entitled to Relief on His Ground Five Ineffective Assistance of Counsel Claim

In Ground Five, Petitioner argues appellate counsel rendered ineffective assistance by failing to challenge pretrial counsels' alleged failure to investigate Petitioner's mental illness and intellectual deficiencies by arranging for a psychologist to determine his competency, degree of criminal responsibility, and intellectual deficiencies following traumatic brain injury. (Doc. no. 1-1, p. 7.)  Petitioner states counsel was aware of these issues and failed to investigate a letter from his psychiatrist, Dr. Todd Peacock, which stated the injury was a likely causative factor regarding Petitioner's violent acts.  (Id.)  Finally, Petitioner argues neither extensive mental health records from the Georgia Department of Corrections nor a list of Petitioner's current psychotropic medications were obtained.  (Id.)

On April 19, 2013, Petitioner, through counsel, filed a motion for a court-ordered mental evaluation.  (Doc. no. 19-6, pp. 127-28.)  The trial court granted the motion and ordered the Department of Human Resources to evaluate Petitioner's competence to stand trial and degree of criminal responsibility or mental competence at the time of the act.  (Doc.

no. 19-6, pp. 118-19.)  On April 23, 2013, the trial court held a hearing to discuss the motion, as it conflicted with Petitioner's request for a speedy trial, and the speedy trial request was withdrawn to accommodate the motion for a mental evaluation.  (Doc. no. 19-7, pp. 44-48.) Although the report of the evaluation is not on the record, it is clear the evaluation was completed, as the State served a copy on Ms. Riedel with discovery, (doc. no. 19-6, pp. 167-68), and the trial court refers to the evaluation in the transcript of the bench trial, (doc. no. 19-7, p. 71.)  Indeed, the trial court stated the evaluation indicated Petitioner was competent to stand trial and understood the charges against him.  (Doc. no. 19-7, p. 71.)

At the state habeas hearing, Mr. Hames testified Petitioner told him of his mental health issues.  (Doc. no. 19-6, p. 24.)  Mr. Hames stated the record contained a request for a mental evaluation and he included information about Petitioner's mental health in the appellate brief.  (Id. at 24-25.)  Mr. Hames assumed Petitioner was found competent because he stood trial.  (Id. at 25.)  Furthermore, Mr. Hames determined, based on his interactions with Petitioner, Petitioner was not insane but, at most "slightly mentally ill" and manipulative.  (Id. at 25.)  The state habeas court recounted Mr. Hames's testimony and found Petitioner had established neither deficient performance nor prejudice because he had not produced evidence showing he actually suffered from a mental illness affecting his competency or criminal responsibility.

As the record clearly indicates, Petitioner's pretrial counsel requested a mental evaluation of Petitioner, the motion was granted, and, as a result of the evaluation, the trial court found Petitioner to be competent.  Indeed, in his state habeas petition, Petitioner acknowledges the evaluation occurred, but he redacted the portions of Ground 5 containing

28

direct references to the evaluation in his federal filing.  (<u>Compare</u> doc. no. 1-1, p. 7, <u>with</u> doc. no. 19-2, p. 12.)  In light of pretrial counsel requesting and obtaining a mental evaluation of Petitioner, and Mr. Hames's testimony he did not believe there was a valid basis for appeal because he did not believe Petitioner was incompetent or insane, Petitioner has not established Mr. Hames was deficient for not raising this issue on appeal.

Furthermore, as the habeas court determined, Petitioner cannot show prejudice because he failed to offer evidence supporting a finding of his incompetence or insanity.  As described in greater detail below, this Court's review is initially limited to whether the state habeas court's decision was based on a reasonable application of federal law and reasonable determination of the facts based on the evidence before it.  28 U.S.C. § 2254(d).  Petitioner failed to present evidence of the medical records cited in his petition at the state habeas hearing.  Thus, the state habeas court's determination Petitioner failed to show prejudice due to the lack of evidence to the contrary was reasonable in light of the evidence before it.  Because the state habeas court reasonably determined Petitioner did not satisfy either prong of the <u>Strickland</u> standard and its determination was based on a reasonable application of the facts before it, Petitioner is not entitled to federal habeas relief on this ground.

### f.     Petitioner Is Not Entitled to Relief on His Ground Seven Ineffective Assistance of Counsel Claim

In Ground Seven, Petitioner argues Mr. Hames provided ineffective assistance because he only raised one issue on appeal and failed to open letters from Petitioner.  (Doc. no. 1-1, p. 9.)  Petitioner argues this resulted in Mr. Hames's failing to consult Petitioner about the appeal, the appellate brief being "grossly inadequate," and Mr. Hames failing to

raise "necessary" issues on appeal.  (Id.)  Petitioner argues Mr. Hames failed to investigate Petitioner's mental health records and present them on appeal and states he has acquired "extensive mental health records."  (Id.)  Petitioner also states he requested Mr. Hames raise the following issues on appeal:  (1) the indictment was erroneous; (2) the State failed to prove the elements of aggravated assault; and (3) the victim's death resulted in a violation of Petitioner's right to confront his witness and the admission of hearsay.

The state habeas court held Petitioner could not establish either deficient performance or prejudice as to these issues because Mr. Hames did, in fact, consult with Petitioner, and he raised on appeal the only issue he believed to be viable and meritorious.  (Doc. no. 19-4, p. 15.)  The court also determined the decision not to raise the cited issues on appeal was reasonable because none had been preserved for appellate review.  (Id.)  Finally, the state habeas court held Petitioner could not show prejudice based on the alleged errors.  (Id.)

First, the record clearly shows Mr. Hames consulted with Petitioner about the issues to raise on appeal.  Mr. Hames asked Petitioner which grounds he was interested in raising and considered the six grounds Petitioner initially sent him.  (Doc. no. 19-6, pp. 19-20.)  After Mr. Hames reviewed the transcript, he informed Petitioner of the grounds he intended to raise and began to draft a brief.  (Id.)  Mr. Hames incorporated portions of the grounds Petitioner requested into the brief, even though they did not have individual merit.  (Id. at 21.)  Mr. Hames believed the sole issue raised on appeal was the only issue worth raising. (Id.)  Mr. Hames specifically testified he did not believe there were viable issues as to Petitioner's indictment, the sufficiency of the evidence, potential Confrontation Clause violations, or admission of inadmissible hearsay testimony.  (Id. at 25-26.)  As to the

unopened letters from Petitioner, Mr. Hames stated he received more than fifty letters from Petitioner during his representation and sent approximately fifteen letters in return.  (Id. at 29, 31.)   Mr. Hames testified the unopened letters were from near the end of his representation of Petitioner or after the brief was already filed.  (Id.)  Thus, Petitioner cannot show Mr. Hames was deficient in failing to consult with him about his appeal.

Second, to the extent Petitioner argues Mr. Hames's appellate brief was "grossly inadequate" because he failed to present Petitioner's mental health records on appeal, Petitioner is not entitled to relief on this issue.  Mr. Hames addressed Petitioner's mental health in relation to the issue of whether the trial court erred by denying Petitioner's motion for a continuance.  In addition, Petitioner failed to attach any exhibits to his habeas petition indicating which, if any, mental health records would have supported his position.  (See doc. no. 19-2.)

Finally, as to the claims Petitioner contends Mr. Hames should have raised on appeal, appellate counsel is not required to raise every non-frivolous issue.  Philmore, 575 F.3d at 1264.  Mr. Hames testified he did not believe there were viable issues to challenge on appeal as to the indictment, the sufficiency of the evidence, and any Confrontation Clause or hearsay issues.  (Doc. no. 19-6, pp. 25-26.)  Instead, Mr. Hames raised the only issue he believed to have merit on appeal.  Thus, even if the other arguments would not have been frivolous to raise on appeal, this would not be enough to show Mr. Hames had performed deficiently.  Accordingly, the state habeas court's decision as to Petitioner's Ground Seven claims was not based on either an unreasonable application of Strickland or determination of the facts.

**g.      Petitioner Is Not Entitled to Relief on His Ground Eight Ineffective Assistance of Counsel Claim**

In Ground Eight, Petitioner argues appellate counsel rendered ineffective assistance by failing to argue on appeal the trial court improperly denied Petitioner's request for a continuance because of Petitioner's inability to subpoena witnesses and review medical records adequately.  (Doc. no. 1-1, p. 10.)  As discussed above, the sole basis for error raised on appeal by Mr. Hames was the trial court erred by failing to grant Petitioner a continuance. Lewis, 768 S.E.2d at 822.  In his appellate brief, Mr. Hames specifically addressed the issues Petitioner raises in this claim:  (1) Petitioner was unable to subpoena witnesses and obtain their attendance the day of the bench trial after he fired Mr. Jarriel; and (2) Petitioner was given approximately 200 pages of medical records the day of the trial and did not have adequate time to review them.  (See doc. no. 19-8, pp. 146-47, 153-154.)  Petitioner's Ground Eight ineffective assistance claim is without merit because Mr. Hames did, in fact, raise the requested issue on appeal.  Accordingly, the state habeas court's decision was not based on either an unreasonable application of Strickland or determination of the facts, and Petitioner is not entitled to relief on this ground.

**h.      Petitioner Is Not Entitled to Relief on His Ground Nine Ineffective Assistance of Counsel Claim**

In Ground Nine, Petitioner argues appellate counsel rendered ineffective assistance by failing to perfect the record for appeal by filing a motion for new trial regarding the issues of denial of counsel at trial and the speedy trial motion.  (Doc. no. 1-1, p. 11.)  Petitioner argues, as a result of Mr. Hames's failure, there was no evidence in the record as to

Petitioner's dispute with trial counsel, Petitioner's mental health issues, the lack of defense witnesses at trial, and the lack of a written ruling on his motion for speedy trial.  (Id.)

At the habeas hearing, Mr. Hames testified Petitioner specifically stated he was not interested in Mr. Hames filing a motion for new trial, even though Mr. Hames explained a motion for new trial was Petitioner's best option for relief.  (Doc. no. 19-6, pp. 18, 29.) Furthermore, Petitioner stated he did not want to delay his appeal and did not want to return before the same trial judge.  (Id. at 19.)  Mr. Hames testified a notice of appeal had been filed by the time he was retained, which "tied his hands" as to filing a motion for new trial.  (Id. at 30.)  Furthermore, Mr. Hames testified the State would have objected to his attempt to add materials that were not part of the record.  (Id. at 30.)

Petitioner testified he wrote Mr. Hames letters requesting a new trial, which remained unopened by Mr. Hames.  (Id. at 35-36.)  Petitioner stated he did not understand what a motion for a new trial was and just wanted his conviction overturned.  (Id. at 37.)  Mr. Hames testified he received numerous letters from Petitioner during his representation and sent approximately fifteen letters to Petitioner.  (Id. at 31.)  Mr. Hames testified the unopened letters were from near the end of his representation and after the brief had been filed.  (Id. at 31.)  Furthermore, Mr. Hames filed Petitioner's appellate brief on August 11, 2014.  (Doc. no. 19-8, p. 156.)  Many of the unopened letters were postmarked after the brief was filed, and none were postmarked more than a few weeks before the filing date.  (See doc. no. 19-6, pp. 42-80.)

The state habeas court determined Mr. Hames's representation was not deficient because the previously-filed notice of appeal hampered his ability to perfect the record for

appeal and Petitioner directed Mr. Hames not to file a motion for new trial because he did not want to appear before the same judge again.  (Doc. no. 19-4, pp. 15-16.)  The state habeas court also held Petitioner could not establish prejudice because he presented no evidence at the hearing showing Mr. Hames either should have or could have presented at a motion for new trial hearing.  (Id. at 16.)

As the state habeas court found, Petitioner cannot show Mr. Hames was deficient for failing to perfect the record with a motion for new trial or that he suffered prejudice from Mr. Hames's alleged shortcoming as to this issue.

Accordingly, the state habeas court's decision was not based on either an unreasonable application of Strickland or determination of the facts, and Petitioner is not entitled to relief on this ground.

### B.   Petitioner's Ground Six Claim Regarding His Motion to Modify or Reduce Sentence Does Not State A Cognizable Basis for Federal Habeas Relief

In Ground Six, Petitioner alleges the trial court abused its discretion and violated his Due Process rights by denying his motion to modify or reduce sentence.  (Doc. no. 1-1, p. 8.) "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987)).

In Georgia, a motion to modify or reduce sentence pursuant to O.C.G.A. § 17-10-1(f) is a post-conviction collateral proceeding, and a direct appeal is the proper method of challenging its denial.  O.C.G.A. § 17-10-1(f) ("Within one year of the date upon which the

34

sentence is imposed, or within 120 days after receipt by the sentencing court of the remittitur upon affirmance of the judgment after direct appeal, whichever is later, the court imposing the sentence has the jurisdiction, power, and authority to correct or reduce the sentence and to suspend or probate all or any part of the sentence imposed.") see also Bradberry v. State, 727 S.E.2d 208, 210 (2012).  Because the claim in Ground Six does not allege a defect in Petitioner's conviction or sentence but in a collateral attack on his sentence, it is not cognizable in the instant § 2254 action, and Petitioner is not entitled to relief on this claim.

## IV.    PETITIONER'S MOTION TO EXPAND RECORD SHOULD BE DENIED

Petitioner seeks to expand the record of his petition to include 140 pages of his mental health records, dated between December 2011 and February 2015.  (Doc. nos. 21, 21-1, 21-2, 21-3.)  Petitioner argues the records relate to his mental state at the time of the offense and at trial and are necessary for proper adjudication of his petition.  (Id. at 1.)  Respondent argues review of claims previously adjudicated on the merits in state court is limited to the record before the state court that adjudicated the claim on the merits and, furthermore, Petitioner failed to show he acted with due diligence to present such evidence to the state courts.  (Doc. no. 22, pp. 2-3.)

"'[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits' . . . and therefore 'evidence introduced in federal court has no bearing on § 2254(d)(1) review.'"  Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (quoting Cullen v. Pinholster, 563 U.S. 170, 181, 185 (2011)) (internal citations omitted).   The restriction "applies even more clearly to § 2254(d)(2), which contains an explicit textual restriction to evaluate the state court ruling

only 'in light of the evidence presented in the State court proceeding.'" Id. (quoting § 2254(d)(2)).

Furthermore, "although § 2254(e)(2) permits federal habeas courts to take new evidence in an evidentiary hearing, that provision applies only when the petitioner has either satisfied § 2254(d), or the federal court is deciding claims that were not adjudicated on the merits in state court." Locke v. Sec'y, Fla. Dep't of Corr., No. 5:15cv55/RV/EMT, 2016 WL 3647795, at *32 (N.D. Fla. May 12, 2016) (citing Cullen, 563 U.S. at 185-86), adopted by 2016 WL 3647875 (N.D. Fla. June 30, 2016) ; see also  Pope v. Sec'y, Fla. Dep't of Corr., 752 F.3d 1254, 1263 (11th Cir. 2014) ("§ 2254(d) must be satisfied before a federal habeas court may consider any § 2254(e)(2) evidence.") (citing Cullen, 563 U.S. at 181-82).

Finally, Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts allows a court to direct the parties to expand the record by submitting additional materials relating to the petition.  However, to expand the record pursuant to Rule 7, "an applicant must meet the requirements under § 2254(e)(2) to obtain an evidentiary hearing." Carney v. Sec'y, Dep't of Corr., No. 8:15-cv-713-T-23JSS, 2015 WL 5965271, at *1 (M.D. Fla. Oct. 13, 2015) (denying motion to expand record pursuant to Rule 7 where relevant claim considered by state court); see also Frazier v. Bouchard, 661 F.3d 519, 523 n.5, 527-28 (11th Cir. 2011) (finding court may not consider record expanded by district court pursuant to Rule 7 where § 2254(d) applies).

Petitioner's federal habeas petition raises the same nine grounds as his state habeas petition and amendment thereto.  (See doc. nos. 1, 1-1, 19-2, 19-3.)  The only grounds arguably relevant to Petitioner's mental health records are Grounds Four, Five, Seven, and

36

Nine:  (4) appellate counsel was ineffective for failing to argue the trial court abused its discretion by failing to grant a continuance, appoint counsel, or order standby counsel; (5) appellate counsel was ineffective for failing to investigate Petitioner's mental illness; (7) appellate counsel was ineffective for failing to consult with Petitioner, raise necessary issues on appeal, and file an adequate brief; and (9) appellate counsel was ineffective for failing to perfect the record for appeal by filing a motion for new trial.  (Doc. no. 1-1, pp. 5-7, 9, 11.) The state habeas court decided these grounds on the merits.  (Doc. no. 19-4, pp. 14-16.) Because the state habeas court denied the claims arguably relevant to Petitioner's mental health records on the merits, Petitioner may not expand the record with his mental health records unless he is able to overcome the restrictions imposed by § 2254(d).  Landers, 776 F.3d at 1295; Carney, 2015 WL 5965271, at *1.

Above, the Court determined the state court decision was not contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts.  Accordingly, Petitioner's motion to expand the record should be **DENIED**.  (Doc. no. 21.)

## V.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, Petitioner's motion to expand the record be **DENIED**, (doc. no.

21), this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 4th day of September, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA